

# Notice of Service of Process

null / ALL
Transmittal Number: 19098602
Date Processed: 12/14/2018

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Nationwide General Insurance Company<br>Entity ID Number 3286564 |
| **Entity Served:** | Nationwide General Insurance Company |
| **Title of Action:** | Battles, Inc vs. Nationwide General Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Sevier County Circuit Court, TN |
| **Case/Reference No:** | 18CV789 II |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 12/14/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | TN DOI on 12/04/2018 |
| **How Served:** | Certified Mail |
| **Sender Information:** | Gilbert McWherter Scott & Bobbitt PLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
500 James Robertson Parkway
Nashville, TN 37243-1131
PH - 615.532.5260, FX - 615.532.2788
Jerald.E.Gilbert@tn.gov

December 6, 2018

Nationwide General Insurance Company
2908 Poston Avenue, C/O C S C
Nashville, TN 37203
NAIC # 23760

Certified Mail
Return Receipt Requested
7017 1450 0002 1333 6771
Cashier # 42060

Re: Battles, Inc. V. Nationwide General Insurance Company

Docket # 18-CV-789 IV

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served December 4, 2018, on your behalf in connection with the above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
 Sevier County
 125 Court Avenue, Ste 204E
 Sevierville, Tn 37862

| Sevier County Circuit Court Sevierville, Tennessee | **STATE OF TENNESSEE CIVIL SUMMONS** page 1 of 1 | Case Number 18-CV-789 IV |
|---|---|---|

**BATTLES, INC. v. NATIONWIDE GENERAL INSURANCE COMPANY**

Serve On:
**NATIONWIDE GENERAL INSURANCE COMPANY
500 James Robertson Parkway
Nashville, TN 37243-0565
PLEASE SERVE THROUGH THE
COMMISSIONER OF INSURANCE**

COPY

2018 NOV 27 AM 8:49
RITA D. ELLISON
SEVIER COUNTY
CIRCUIT COURT
FILED

You are hereby summoned to defend a civil action filed against you in Circuit Court, Sevier County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: 11/27/18

Andrea Clark D.C.
Clerk / Deputy Clerk

Attorney for Plaintiff: J. Brandon McWherter, Gilbert Russell McWherter Scott Bobbitt PLC
341 Cool Springs Blvd., Suite 230, Franklin TN 37067

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____
Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

Date: _____ By: _____
Officer, Title

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____.
The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____
Notary Public / Deputy Clerk (Comm. Expires _____ )

Signature of Plaintiff

Plaintiff's Attorney (or Person Authorized to Serve Process)
(Attach return receipt on back)

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____.*

# IN THE CIRCUIT COURT OF SEVIER COUNTY, TENNESSEE
## AT SEVIERVILLE

BATTLES, INC.,

    Plaintiff,

v.

NATIONWIDE GENERAL
INSURANCE COMPANY,

    Defendant.

No: 18-CV-789-IV

JURY DEMANDED



## COMPLAINT

COMES NOW the Plaintiff, Battles, Inc., by and through counsel, and submits the following for its Complaint against Nationwide General Insurance Company:

### PARTIES AND JURISDICTION

1. Battles, Inc. ("Plaintiff") is a Tennessee corporation with its principal office located at 1359 E. Parkway, Suite 1, Gatlinburg, Tennessee. At all times relevant hereto, Plaintiff was the owner of the buildings located at 1357 and 1359 E. Parkway, Gatlinburg, Tennessee (the "Insured Premises").

2. Nationwide General Insurance Company ("Defendant") is an insurance company conducting business in the State of Tennessee, including Sevier County, Tennessee. Defendant was incorporated under the laws of the State of Ohio, and its principal place of business is located in Columbus, Ohio.

3. This Complaint originates as the result of the November 28, 2016 wildfire and an associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiff's insurance

claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

4. Jurisdiction and venue are proper in this Court.

## FACTS

5. At all times relevant hereto, Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure the commercial buildings located at the Insured Premises against property and business loss damage, bearing Policy No. ACP BPRG3007667215 (the "Policy"). As relevant hereto, the Policy's term was May 6, 2016 to May 6, 2017.

6. At all times relevant hereto, the Insured Premises consisted of commercial buildings and surrounding area, which Plaintiff owns and operates as a retail strip center.

7. The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

8. The declarations of the Policy reflect that insurance coverage was provided for the buildings and loss of business income/extra expense located on the Insured Premises. The limit of insurance for the buildings was as follows: (1) 1359 E. Parkway - $2,096,500.00; and (2) 1359 E. Parkway - $527,100.00.

9. The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss or damage except for as specifically excluded or limited by the Policy.

10. The Policy's coverage for the buildings and structures on the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

2

11. Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

12. On November 28, 2016, the buildings on the Insured Premises were infested and damaged by the accumulation of soot, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the buildings and business personal property at the Insured Premises as well as loss of business income shall hereafter be referred to as the "Loss."

13. The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg. A high wind-driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

14. Conditions at the Insured Premises at the time of the firestorm included thick smoke, low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris and fire related by-product. The roof, roofing components and other exterior components and fixtures were covered with soot and char deposits. The interior of the buildings including, but not limited to the food preparation areas and food storage areas in the restaurant location, at the Insured Premises was smoky with soot and fire debris in the air. Air quality remained hazy and poor for several days after the firestorm.

3

15. After the wildfire, Plaintiff attempted a preliminary self-remediation of the Insured Premises. This included a wipe-down of most exposed surfaces to remove soot that had settled on interior surfaces of the Insured Premises.

16. After the Loss, the buildings on the Insured Premises were infested with wildfire debris, including the presence of soot, ash, char, or other wildfire debris in and throughout the roof assemblies, window assemblies, interior partition walls, light fixtures, ducting, and other building components. Additionally, the buildings' wall, ceiling, and floor cavities were infested with wildfire debris. The Loss requires significant remediation.

17. Plaintiff promptly reported the Loss to Defendant.

18. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

19. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

20. Defendant has acknowledged that the Loss is a compensable claim and has made partial payments for the Loss.

21. Defendant failed to sufficiently investigate the Loss and to determine the actual and real scope of damages from the Loss.

22. Defendant wrongfully refused to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss. The payments made by Defendant to Plaintiff were insufficient to indemnify Plaintiff for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

23. Plaintiff advised Defendant that the payments made were insufficient to indemnify it for the damage to the Insured Premises from the Loss.

4

24. By letter dated January 29, 2018, Plaintiff advised Defendant in writing that it was invoking the Policy's appraisal clause because of the lack of an agreement regarding the amount of the loss between the Plaintiff and Defendant.

25. The Policy's appraisal clause provides as follows:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

26. Plaintiff selected Chuck Howarth as its appraiser.

27. On February 5, 2018, Defendant confirmed that that there was a disagreement as to the amount of the loss and accepted Plaintiff's appraisal demand. Defendant selected Larry Masters as its appraiser.

28. Mr. Howarth and Mr. Masters selected John Voelpel to serve as the appraiser umpire.

29. On March 21, 2018, Defendant advised Plaintiff that the appraisal process would be "held in abeyance" while Defendant investigated the portion of the claim relating to interior soot and smoke damage.

5

30. By letter dated May 17, 2018, Defendant denied Plaintiff's claim associated with the interior of the buildings, claiming that the interiors had not been impacted by the wildfires. Defendant further agreed to move forward with appraisal "with the stipulation that [it] will not consider interior damages as part of the appraisal."

31. Defendant violated the terms of the Policy by attempting to limit the appraisal process to exclude portions of Plaintiff's damages.

32. In October 2018, after numerous requests by Plaintiff to reconsider its position, Defendant confirmed its refusal to appraise all of the damages suffered by Plaintiff as a result of the Loss and continues its refusal as of the filing of this Complaint.

33. Wildfire residue exists in the buildings at the Insured Premises that was not present prior to the November 2016 wildfire.

34. Defendant has not properly paid to clean, seal, and paint or otherwise restore numerous infested areas of the Insured Premises. Standard protocol also requires post-cleaning testing (which Defendant did not request nor pay for).

35. The basis for Defendant's denial of Plaintiff's appraisal demand is that "the interior of the strip center and stores have not been impacted by forest fire by-product deposits". That is not true, as evidenced by sample testing conducted by both Plaintiff's and Defendant's consultants. There are no coverage issues, but instead the parties' dispute is limited to the amount of the loss.

36. Defendant's decision to deny payment, or even to allow appraisal to resolve the dispute, is unconscionable.

37. Plaintiff has not been properly compensated for the damage to its buildings, even the damage admitted by Defendant. A smoke odor is still present, and soot testing has confirmed

6

Case 3:19-cv-00013-TWP-DCP   Document 1-2   Filed 01/07/19   Page 9 of 14   PageID #: 13

the presence of wildfire residue in places for which Defendant has not paid to clean, treat, or properly repair.

38. Defendant refused, and still refuses, to make full payment to Plaintiff for its covered loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute concerning the amount of the loss.

39. Defendant's failure and refusal to pay Plaintiff the amounts owed to it for the Loss, and Defendant's refusal to submit the dispute over the amount of loss to appraisal, is without justification, and was intentional, fraudulent, malicious and/or reckless.

40. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiff under the Policy and refusal to submit the claim to appraisal has caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

## CAUSES OF ACTION

### Count 1 – Breach of Contract

41. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

42. The Policy issued by Defendant is a binding contract and is supported by valid consideration.

43. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiff for the Loss under the Building coverages afforded by the Policy; (b) Defendant's failure and refusal to pay such other amounts to Plaintiff as may be

7

required by the Policy; and (c) Defendant's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy.

44. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy.

45. Defendant is liable to Plaintiff for its losses.

46. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) refused payment on Plaintiff's claim for no valid reason whatsoever; (5) failed to treat Plaintiff's interests with equal regard to its own; (6) promised prompt action and claim-handling but then failed to provide any payment or even any prompt communication or status reports; (7) failed and refused to pay for obvious damage caused by the Loss; (8) failed to timely investigate, scope, and estimate the Loss; (9) knew the true facts that the buildings were damaged but falsely represented to Plaintiff that only the exterior of the Insured Premises was damaged and ignored other damaged areas for which no compensation has been paid; (10) refused Plaintiff's contractual right to appraisal to resolve its dispute with Defendant concerning the amount of the loss in order to protect Defendant's own financial interest to the detriment of Plaintiff; (11) concealed important and material facts from Plaintiff in an effort to minimize the amount Defendant would have to pay on the claim; (12) misrepresented relevant

facts and policy provisions to Plaintiff; (13) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (14) forced Plaintiff to file suit to enforce its rights under the Policy; and (15) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim and then denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff.

47. Plaintiff seeks, and is entitled to, punitive damages.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment to Plaintiff as follows:

A. For compensatory damages to Plaintiff against Defendant not to exceed $1,750,000.00;

B. For punitive damages against Defendant in an amount to be determined by the jury but not to exceed nine times the amount of compensatory damages awarded to Plaintiff or such other amount as allowed by law;

C. For specific performance of the Policy's appraisal clause;

D. For all costs incurred by Plaintiff as a result of this action;

E. For pre- and post-judgment interest; and

F. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT & BOBBITT PLC

*(signature)*

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
Telephone: (615) 354-1144
Fax: (731) 664-1540

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 North Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
Fax: (731) 664-1540

*Attorneys for Plaintiff*

## COST BOND

This firm stands as surety for costs in this cause.

GILBERT McWHERTER
SCOTT & BOBBITT PLC

*(signature)*

10

**TN** Department of **Commerce & Insurance**

Service of Process
500 James Robertson Parkway
Nashville, Tennessee 37243

CERTIFIED MAIL



7017 1450 0002 1333 6771



FIRST CLASS

U.S. POSTAGE >>> PITNEY BOWES

ZIP 37243
02 4W
0000346000 $ 007.62
DEC. 13. 2018

7017 1450 0002 1333 6771    12/06/2018
NATIONWIDE GENERAL INSURANCE COMPANY
2908 POSTON AVENUE, C/O C S C
NASHVILLE, TN 37203

Case 3:19-cv-00013-TWP-DCP Document 1-2 Filed 01/07/19 Page 14 of 14 PageID #: 18